**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| JCD, INC. d/b/a JCD MARKETING<br>Plaintiff, | * | CIVIL ACTION NO. |
| | * | SECTION: |
| v. | * | JUDGE: |
| HRI HOSPITALITY, LLC d/b/a<br>ALOFT NEW ORLEANS DOWNTOWN<br>Defendant. | * | MAGISTRATE: |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes JCD, Inc. d/b/a JCD Marketing ("JCD"), which respectfully represents the following:

**PARTIES**

1.

JCD is a corporation incorporated under Georgia law with its principal place of business in Suwanee, Georgia.

2.

Made Defendant herein is HRI Hospitality, LLC d/b/a Aloft New Orleans Downtown ("Aloft"). Aloft is a limited liability company whose members are Craig Devine, A. Thomas Leonard, Jr., Gary Gutierrez, and DK-HRIH Holdings, LLC.

3.

Craig Devine is a person of the full age of majority and a Pennsylvania resident.

4.

A. Thomas Leonard, Jr. is a person of the full age of majority and a Louisiana resident.

5.

Gary Gutierrez is a person of the full age of majority and an Arizona resident.

6.

DK-HRIH Holdings, LLC is a limited liability company whose members are Craig Devine (a Pennsylvania resident), HRIH Investment Member, LLC, and NOLA Investors, LLC.

7.

HRIH Investment Member, LLC is a limited liability company whose members are Craig Devine (a Pennsylvania resident) and Properties PPU, LLC.

8.

NOLA Investors, LLC is a limited liability company whose sole member is Marion H. Rapier, a person of the full age of majority and a Louisiana resident.

9.

Properties PPU, LLC is a limited liability company whose members are A. Thomas Leonard, Jr., Pres Kabacoff, and Edward Boettner, each of whom are persons of the full age of majority and Louisiana residents.

**JURISDICTION AND VENUE**

10.

This matter involves a controversy between citizens of different states and an amount in controversy in excess of $75,000, exclusive of interest and costs. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

11.

JCD would have profited in excess of $75,000 if had been able to utilize the Aloft room block for its 2025 Super Bowl tours and packages.

12.

Venue is proper under 28 U.S.C. § 1391(b), as it is where a substantial part of the events giving rise to the claims asserted herein occurred.

**FACTS**

13.

JCD is in the business of creating and marketing tour packages for major sporting events, such as the Super Bowl.

14.

The Super Bowl is a U.S. cultural hallmark. It is the most-watched U.S. television program with hundreds of millions of people watching on television and an estimated hundreds of thousands of more people flocking to the host city. The 2025 Super Bowl is to be hosted in New Orleans, which makes attendance at the 2025 Super Bowl even more desirable, as New Orleans is one of the most popular tourist destinations in the United States.

15.

Accordingly, this breach of contract claim is unique because the block of hotel rooms is not for just any weekend in any city. Reserving a block of hotel rooms in New Orleans for the 2025 Super Bowl is done through meticulous planning years in advance.

16.

Accordingly, in October 2022, JCD's Director Amy Chandler contacted Aloft, a hotel located in downtown New Orleans operated by HRI Hospitality, to reserve a block of hotel rooms for the 2025 Super Bowl.

17.

Ms. Chandler communicated with Monique Davis, Aloft's Director of Sales and Marketing, to inquire about room rates for a block of 25 hotel rooms for February 6, 2025 through February 10, 2025, the weekend of the 2025 Super Bowl.

18.

During these communications, Ms. Chandler expressed to Ms. Davis that JCD was a third-party planner that would have clients in the rooms, and Ms. Davis acknowledged that JCD was booking this hotel room block for attendees.

19.

Subsequently, on November 14, 2022, JCD and Aloft entered into the contract.

20.

Under the contract, Aloft would provide 22 king rooms and 3 double rooms from February 6, 2025 through February 10, 2025 for a rate of $599.00 per night plus applicable tax, and JCD was to pay an initial advance of $17,425.95 on November 14, 2022, and, pursuant to the contract, the remaining balance was due in full on an agreed upon schedule of $17,425.95 on February 7, 2024; $17,425.95 on July 7, 2024; and $17,425.95 on December 7, 2024. [1]

21.

JCD executed a credit card authorization and "agree[d] that the Hotel may charge to [its] credit card any payment as required under this Group Sales Agreement."[2]

22.

On April 25, 2023, Ms. Chandler went to Aloft for a site visit and met with Ms. Davis.

[1] *See generally* Exhibit A, Contract between JCD Marketing and Aloft New Orleans Downtown, which is incorporated herein by reference.
[2] *Id.* at p. 2.

23.

During the April 25, 2023 site visit, Ms. Chandler and Ms. Davis discussed the tour packages that JCD puts together for major sporting events, including the 2025 Super Bowl, and Ms. Chandler explained JCD's program and plans for the block of hotel rooms booked with Aloft for February 6, 2025 through February 10, 2025, the weekend of the 2025 Superbowl.

24.

Ms. Davis sent a follow-up email after the site visit indicating that she was looking forward to continuing their relationship leading up to JCD's arrival for the weekend of the 2025 Super Bowl.

25.

At the time of the April 25, 2023 site visit and follow-up email, neither Ms. Davis nor anyone else at Aloft had charged JCD's credit card for the November 14, 2022 initial payment.

26.

It was not until August 27, 2024 that Aloft's new Director of Sales, Megan Heitz, charged the initial payment. Neither the February 7, 2024 nor the July 7, 2024 deposits have been charged to JCD's credit card on file with Aloft despite JCD's explicit consent under the contract to do so.

27.

On September 18, 2024, Ms. Heitz called Ms. Chandler to inform her that Aloft was cancelling JCD's room block due to "nonpayment."

28.

On September 20, 2024, Ms. Heitz sent a letter to Ms. Chandler confirming that Aloft cancelled JCD's room block for JCD's failure to remit timely payment of the deposits.

29.

Aloft cancelled JCD's room block despite having JCD's credit card information since November 14, 2022 and having authorization under the contract to charge JCD's credit card for any payment required.

30.

JCD contracted for this hotel room block over two years before the 2025 Super Bowl in anticipation of the high demand for hotel rooms. And now, with the 2025 Super Bowl less than four months away, there are limited, if any hotel room blocks available in downtown New Orleans from February 6, 2025 through February 10, 2025, the weekend of the 2025 Superbowl.

**BREACH OF CONTRACT**

31.

Paragraphs 1 through 30 are repeated and realleged as though fully set forth here.

32.

JCD and Aloft entered into a contract on November 14, 2022 for a block of 25 hotel rooms for February 6, 2025 through February 10, 2025, the weekend of the 2025 Super Bowl.

33.

The contract stated that JCD was to pay an initial advance of $17,425.95 on November 14, 2022, and the remaining balance was due in full on an agreed upon schedule of $17,425.95 on February 7, 2024; $17,425.95 on July 7, 2024; and $17,425.95 on December 7, 2024.

34.

Pursuant to the contract, JCD executed a credit card authorization and "agree[d] that the Hotel may charge to [its] credit card any payment as required under this Group Sales Agreement."[3]

[3] Exhibit A at p. 2.

35.

Aloft failed to charge JCD's credit card for the initial deposit on November 14, 2022.

36.

On February 7, 2024, Aloft failed to charge JCD's credit card for the second deposit.

37.

On July 7, 2024, Aloft failed to charge JCD's credit card for the third deposit.

38.

Aloft did not charge JCD's credit card for the initial deposit until August 27, 2024.

39.

Aloft has never charged JCD's credit card for the remaining deposits due despite JCD's express consent under the contract to do so.

40.

On September 18, 2024, Aloft abruptly cancelled JCD's contract for a block of 25 hotel rooms for February 6, 2025 through February 10, 2025.

41.

Pursuant to the contract, Aloft agreed to provide a block of 25 hotel rooms for February 6, 2025 through February 10, 2025, and JCD agreed to have its credit card charged for the deposit amounts owed for this room block.

42.

JCD performed its obligations as agreed upon pursuant to the contract.

43.

Aloft failed to perform its obligations under the contract by cancelling the contract and failing to provide the agreed-upon hotel room block of 25 rooms for February 6, 2025 through February 10, 2025.

44.

Importantly, the contract explicitly states that "[t]his event is non-cancellable."[4]

45.

By cancelling the contract and failing to provide the agreed upon rooms, Aloft has breached the contract terms.

46.

Aloft is liable for the damages caused by its failure to perform the agreed-upon conventional obligation.

47.

Aloft knew that JCD entered into the contract with the intention that third parties would use the rooms in the hotel room block such that Aloft's failure to perform its obligations under the contract would result in a loss of profits for JCD.

48.

Aloft refused to fulfill its contractual obligations and intentionally failed to perform its obligations by not charging JCD's credit card.

[4] Exhibit A at p. 3.

49.

As a result of Aloft's breach of contract, JCD seeks and is entitled to a judgment against Aloft for its loss sustained, the profit of which it has been deprived, and all other damages that are a direct consequence of Aloft's failure to perform.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, JCD, Inc. d/b/a JCD Marketing prays that this Complaint for Damages be deemed good and sufficient and that after due proceedings are had there be judgment in JCD, Inc. d/b/a JCD Marketing's favor and against HRI Hospitality, LLC d/b/a Aloft New Orleans Downtown and that Defendant, HRI Hospitality, LLC d/b/a Aloft New Orleans Downtown, be held liable to JCD, Inc. d/b/a JCD Marketing for all damages sustained and to be sustained by JCD, Inc. d/b/a JCD Marketing, for costs and attorney's fees as provided for under the contract, and for all other general and equitable relief to which it may be entitled.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART MOORE & DANIELS LLC**

*/s/ Gabrielle C. Broders*________________
Lloyd N. Shields (La. Bar No. 12022)
Gabrielle C. Broders (La. Bar No. 39821)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Tel: (504) 310-2100
Fax: (504) 310-2101
LNS@irwinllc.com
gbroders@irwinllc.com

Counsel for JCD, Inc.
d/b/a JCD Marketing




**DESCRIPTION OF GROUP AND EVENT**

The following represents an agreement between Aloft New Orleans Downtown, 225 Baronne Street, New Orleans, LA, 70112, (504) 581-9225 and JCD Marketing.

ORGANIZATION: JCD Marketing
CONTACT:
Name: Amy Chandler
Street Address: 4604 Whitestone Way
City, State, Postal Code: Suwanee, GA 30024
Phone Number: 404-446-1261
E-mail Address: amy@jcdmarketinginc.com

NAME OF EVENT: JCD Marketing Superbowl 2025 Room Block
REFERENCE #: M-OH59YBY
OFFICIAL PROGRAM DATES: Thursday, 02/06/2025 - Monday, 02/10/2025

**GUEST ROOM COMMITMENT/GROUP ROOM RATES**

The Hotel agrees that it will provide, and JCD Marketing agrees that it will be responsible for utilizing, 100 room nights in the pattern set forth below (such number and such pattern, the "Room Night Commitment"):

**JCD Marketing Superbowl 2025**

| Date | Day | Aloft King | Aloft Double Queen | Total Rooms |
|---|---|---|---|---|
| 02/06/2025 | Thu | 22 | 3 | 25 |
| 02/07/2025 | Fri | 22 | 3 | 25 |
| 02/08/2025 | Sat | 22 | 3 | 25 |
| 02/09/2025 | Sun | 22 | 3 | 25 |

| Start Date | End Date | Room Type | Single |
|---|---|---|---|
| 02/06/2025 | 02/09/2025 | Aloft King or Aloft Double Queen | $599.00 |

Hotel's room rates are subject to applicable state and local taxes (currently 16.2%) in effect at the time of check-out.

**COMMISSION**

The group room rates listed above are commissionable at 7% to JCD Marketing IATA 11671446

**METHOD OF RESERVATIONS**

Reservations for the Event will be made by rooming list.

**GUARANTEED RESERVATIONS**

All reservations must be accompanied by a first night room deposit by JCD Marketing. Hotel will not hold any reservations unless secured by one of the above methods.

**CUT-OFF DATE**

Reservations by attendees must be received on or before **Monday, January 6, 2025**, (the "Cut-Off Date"). At the Cut-Off Date, Hotel will review the reservation pick up for the Event, release the unreserved rooms for general sale, and determine whether it can accept reservations based on a space- and rate-available basis at the JCD Marketing group rate after this date.



MARRIOTT CONFIDENTIAL AND PROPRIETARY INFORMATION








**BILLING ARRANGEMENTS**
The following billing arrangements apply:

All contracted room and tax charges will be applied to the Master Account established by JCD Marketing.
An initial advance payment of $17,425.95 will be required to hold arrangements on a definite basis. This advance payment is due with contract return and will be credited toward Group's Master Account. The remaining balance shall be due in full on an agreed upon schedule below, for a total of $69,703.80:

$ 17,425.95 Due: _February 7, 2024 ___________

$ 17,425.95 Due: July 7, 2024

$ 17,425.95 Due:_ December 7, 2024 ___________

**PAYMENT BY CREDIT CARD OR COMPANY CHECK**

**If JCD Marketing wishes to pay any portion of its obligation by credit card or company check, the credit card information must be entered into our secure online website.**

**Prior to the execution of this agreement JCD Marketing shall provide hotel with credit card authorization information. A Credit Card Information Request e-mail will be sent to the e-mail address provided by JCD Marketing.**

This process must also be followed if direct billing has not been approved and the Master Account charges will be paid by credit card or company check.

JCD Marketing agrees that the Hotel may charge to this credit card any payment as required under this Group Sales Agreement.

**ROOMS ATTRITION – Rooms Per Night**
Hotel is relying upon JCD Marketing's nightly use of the Room Night Commitment, JCD Marketing agrees that a loss will be incurred by hotel if JCD Marketing's actual usage is less than one hundred percent (100%) of the Room Night Commitment on any night of the Event.

Hotel agrees to allow for a 5-room reduction in the nightly Room Night Commitment. Each night during the Event, Hotel will subtract the actual room usage for that night and the amount of permissible attrition for that night from the Room Night Commitment for that night. The difference of room nights will be multiplied by the group's average room rate (excluding staff and or complimentary rooms) and the resulting amount will be posted as nonrefundable nonuse charges to JCD Marketing's Master Account, plus applicable taxes, at the conclusion of the Event.

These charges represent a reasonable effort on behalf of the Hotel to establish its loss prospectively and shall be due as liquidated damages.



JC




**CANCELLATION - Contracts with Room Nights Only**

This event is non-cancellable, In the event of a group cancellation occurring, liquidated damages in the amount of one hundred percent (100%) of the Room Night Commitment.

**IMPOSSIBILITY**

The performance of this Agreement is subject to termination without liability upon the occurrence of any circumstance beyond the control of either party – such as acts of God, war, acts of terrorism, government regulations, disaster, strikes, civil disorder, or curtailment of transportation facilities – to the extent that such circumstance makes it illegal or impossible for the Hotel to provide, or for groups in general to use, the Hotel facilities. The ability to terminate this Agreement without liability pursuant to this paragraph is conditioned upon delivery of written notice to the other party setting forth the basis for such termination as soon as reasonably practical - but in no event longer than ten (10) days - after learning of such basis.

**COMPLIANCE WITH LAW**

This Agreement is subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and JCD Marketing agree to cooperate with each other to ensure compliance with such laws.

**CHANGES, ADDITIONS, STIPULATIONS, OR LINING OUT**

Any changes, additions, stipulations or deletions including corrective lining out by either Hotel or JCD Marketing will not be considered agreed to or binding on the other unless such modifications have been initialed or otherwise approved in writing by the other.

**DISPUTE RESOLUTION**

In the event of dispute resolution, the non-prevailing party will pay the other's costs and attorney's fees.

**LIQUOR LICENSE**

JCD Marketing understands that Hotel's liquor license requires that beverages only be dispensed by Hotel employees or bartenders. Alcoholic beverage service may be denied to those guests who appear to be intoxicated or are underage.

**COMPLIANCE WITH EQUAL OPPORTUNITY LAWS**

This section describes Marriott's obligations as a U.S. federal contractor. It does not apply to customers that are not part of the U.S. federal government or using funds from the U.S. federal government for this contract.

Marriott shall comply with all applicable laws, statutes, rules, ordinances, codes, orders and regulations of all federal, state, local and other governmental and regulatory authorities and of all insurance bodies applicable to the Hotel premises in performing its obligations under this Agreement.

Marriott (referred to as "contractor" in this section) shall comply with Executive Order 11246, as amended, Section 503 of the Rehabilitation Act of 1973, as amended, and the Vietnam Era Veterans' Readjustment Assistance Act, as amended, which are administered by the United States Department of Labor ("DOL"), Office of Federal Contract Compliance Programs ("OFCCP"). The equal employment opportunity clauses of the implementing regulations, including but not limited to 41 C.F.R. §§ 60.1-4, 60-300.5(a), and 60-741.5(a), are hereby incorporated by reference, with all relevant rules, regulations and orders pertaining thereto. **This contractor and subcontractor shall abide by the requirements of 41 C.F.R. §§ 60-1.4(a), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity, or national origin. Moreover, these regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, protected veteran status or disability.**








Marriott also shall comply with Executive Order 13496 and with all relevant rules, regulations and orders pertaining thereto, to the extent applicable. The employee notice clause and all other provisions of 29 C.F.R. Part 471, Appendix A to Subpart A, are hereby incorporated by reference.

To the extent applicable, Marriott shall include the provisions of this section in every subcontract or purchase order so that such provisions shall be binding upon each contractor, subcontractor or vendor performing services or providing materials relating to this Agreement and the services provided pursuant to the terms hereof.

**PRIVACY**

Marriott International, Inc. ("Marriott") is committed to complying with obligations applicable to Marriott under applicable privacy and data protection laws, including to the extent applicable EU data protection laws. Hotel shall comply with the then-current Marriott Group Global Privacy Statement (the "Privacy Statement," currently available at http://www.marriott.com/about/privacy.mi) with respect to any personal data received under this Agreement.

Without limiting the foregoing obligation, Hotel has implemented measures designed to: (1) provide notice to individuals about its collection and use of their personal data, including through the Privacy Statement; (2) use such personal data only for legitimate business purposes; (3) provide means by which individuals may request to review, correct, update, suppress, restrict or delete or port their personal data, consistent with applicable law; (4) require any service providers with whom personal data is shared to protect the confidentiality and security of such data; and (5) use technical and organizational measures to protect personal data within its organization against unauthorized or unlawful access, acquisition, use, disclosure, loss, or alteration.

JCD Marketing will obtain all necessary rights and permissions prior to providing any personal data to Hotel, including all rights and permissions required for Hotel, Hotel affiliates, and service providers to use and transfer the personal data to locations both within and outside the point of collection (including to the United States) in accordance with Hotel's privacy statement and applicable law. Notwithstanding any other provision, Hotel may use an individual's own personal data to the extent directed by, consented to or requested by such individual.

**UNATTENDED ITEMS/ADDITIONAL SECURITY**

The Hotel cannot ensure the security of items left unattended in function rooms. Special arrangements may be made with the Hotel for securing a limited number of valuable items. If JCD Marketing requires additional security with respect to such items or for any other reason, the Hotel will assist in making these arrangements. All security personnel to be utilized during the Event are subject to Hotel approval.

**USE OF OUTSIDE VENDORS**

If JCD Marketing wishes to hire outside vendors to provide any goods or services at Hotel during the Event, JCD Marketing must notify Hotel of the specific goods or services to be provided and provide sufficient advance notice to the Hotel so that the Hotel can (i) determine, in Hotel's sole discretion, whether such vendor must provide Hotel, in form and amount reasonably satisfactory to Hotel, an indemnification agreement and proof of adequate insurance, and (ii) approve, using reasonable judgment, the selection of the outside vendor and the goods or services to be provided by such outside vendor to JCD Marketing, taking into consideration: (a) whether Hotel offers such goods and services; (b) the risk level posed by certain activities; and (c) the safety and well-being of guests at Hotel.

**PERFORMANCE LICENSES**

JCD Marketing will be solely responsible for obtaining any necessary licenses or permission to perform, broadcast, transmit, or display any copyrighted works (including without limitation, music, audio, or video recordings, art, etc.) that JCD Marketing may use or request to be used at the Hotel.



AC




**MARRIOTT BONVOY EVENTS**

Marriott Bonvoy Events provides Points or Miles to eligible Marriott Bonvoy Members who book and hold qualifying meetings and events at Participating Properties.

Approximately ten (10) business days after the conclusion of the Event (provided that the Event is not cancelled and JCD Marketing has otherwise complied with the material terms and conditions of this Agreement), the Hotel will award Points or Miles to the Member and relevant account identified below. By inserting the airline frequent flyer account information, the recipient elects to receive Miles instead of Points.

Marriott Bonvoy Events is not available in certain circumstances, including (1) for any government employee or official booking a government event (U.S. government event or non-U.S. government event); (2) for any employee of a state-owned or state-controlled entity ("SOE") booking an event on behalf of the SOE; or (3) for any other planner or intermediary when booking an event on behalf of a non-U.S. governmental entity or SOE. Hotels in the Asia Pacific region are restricted from awarding Points or Miles to any intermediary booking an event on behalf of any governmental entity or SOE.

GROUP MUST CHECK **ONE** OPTION BELOW:

The Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement) is eligible to receive Points or Miles.

Member Name Carey Dean
Marriott Bonvoy Membership Number 102848905

*If Miles are desired instead of Points, please also provide:

Participating airline name ______
Participating airline frequent flyer account number ______

OR

The Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement) declines or is not eligible to receive Points or Miles and hereby waives the right to receive Points or Miles in connection with the Event.

The individual identified above to receive either Points or Miles may not be changed without such individual's prior written consent. The number of Points or Miles to be awarded shall be determined pursuant to the Marriott Bonvoy Terms and Conditions (the "Terms and Conditions"), as in effect at the time of award. All Marriott Bonvoy Terms and Conditions apply. The Terms and Conditions are available on-line at https://www.marriott.com/loyalty/terms/default.mi and may be changed at the sole discretion of Marriott International, Inc. at any time and without notice. Capitalized terms used in this section have the meanings given to them in the Terms and Conditions.

*Electronic selection – This may be done in Microsoft Word by double-clicking on the above unfilled box, choosing a blackened box, and then clicking "Insert." Alternatively, one can use the commands "Insert" and "Symbol," choose the blackened box, and then click "Insert."

**HIGH RISK ACTIVITIES**

Hotel has committed to providing the room nights and function space, as applicable, set forth in this Agreement based on information about the event that JCD Marketing has given to the Hotel. JCD Marketing agrees that it has presented all material information required in order for Hotel to provide the rooms and facilities set forth in this Agreement. Should Hotel, in its sole reasonable discretion, determine at any time that the Event will include a high-risk activity that was previously undisclosed to the Hotel (including by way of example, and not by limitation, biological agents, pyrotechnics, etc.), Hotel may terminate this Agreement immediately and without liability, upon written notice to JCD Marketing.



MARRIOTT CONFIDENTIAL AND PROPRIETARY INFORMATION






**ACCEPTANCE**

When presented by the Hotel to JCD Marketing, this document is an invitation by the Hotel to JCD Marketing to make an offer. Upon signature by JCD Marketing, this document will be an offer by JCD Marketing. Only upon signature of this document by all parties will this document constitute a binding agreement. Unless the Hotel otherwise notifies JCD Marketing at any time prior to JCD Marketing's execution of this document, the outlined format and dates will be held by the Hotel for JCD Marketing on a first-option basis until [DATE]. If JCD Marketing cannot make a commitment prior to that date, this invitation to offer will revert to a second-option basis or, at the Hotel's option, the arrangements will be released, in which case neither party will have any further obligations.

Upon signature by both parties, JCD Marketing and the Hotel shall have agreed to and executed this Agreement by their authorized representatives as of the dates indicated below.

**SIGNATURES**

Approved and authorized by JCD Marketing:

Name: (Print) Amy Chandler

Title: (Print) director

Signature: Amy Chandler

Date: 11/14/22

Approved and authorized by Hotel:

Name: (Print) Monique Davis

Title: (Print) Director of Sales

Signature: [signature]

Date: 11/14/22



MARRIOTT CONFIDENTIAL AND PROPRIETARY INFORMATION